**Nick KIKALOS and Helen Kikalos, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 2:98 CV 618.

United States District Court, N.D. Indiana, Hammond Division.

Jan. 7, 2003.

---

Donald E. Schlyer, Roger A. Weitgenant, David Ronald Novak, Schlyer & Associates PC, Elizabeth A. Deremiah, Ruman Clements Tobin and Holub, Merrillville, IN, Ralph M. Bernstein PHV, Ralph M. Bernstein and Associates, Chicago, IL, for Plaintiffs.

Carol A. Davilo, US Attorney's Office, Hammond, IN, Craig Weaver, Jennifer Gazaille Cohen, Stacy Hallett, US Department of Justice, Washington, DC, for Defendant.

## ORDER

SIMON, District Judge.

This matter is presently before the Court on the Motion *in Limine* (Docket No. 87) of Plaintiffs Nick and Helen Kikalos to exclude the testimony of the Defendant's expert Dr. Michael Baye, Ph.D. under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Court having now duly considered Plaintiffs' Motion and having reviewed the proffered report of Dr. Baye, now rules as follows.

The expert witness for the Defendant United States is Professor Michael Baye, Ph.D. Dr. Baye is a professor of economics and public policy at Indiana University. Dr. Baye received his B.S. degree in economics from Texas A & M University and later an M.S. in economics and Ph.D. from Purdue University. Dr. Baye received a National Science Foundation Grant during 1984–1986 to conduct research on income taxes and the measurement of prices and a Fulbright award during 1985–1986 to conduct research and present lectures on spatial pricing at Erasmus University Rotterdam.

Dr. Baye's specialties within economics include industrial organization, pricing, and microeconomic theory. In addition to publishing in and serving on the boards of

various economic journals, Dr. Baye has taught Ph.D. level courses in his specialties at Indiana University, Penn State University, Texas A & M University and the University of Kentucky.

The Plaintiffs do not dispute the qualifications of Dr. Baye to offer expert testimony. Instead, the Plaintiffs move to exclude the testimony of Dr. Baye on the grounds that his "opinions are based almost exclusively on guesses, estimations, and speculation instead of the factual information available in this case." The Court disagrees.

In this case, Plaintiffs along with their son and daughter owned and operated three "Nick's Liquors" stores in Hammond, Indiana. All of Plaintiffs sales of beer, wine, liquor, cigarettes and other assorted items were conducted in cash and the Plaintiffs paid their payroll in cash. Nick Kikalos did all of the accounting for the liquor stores. At the end of each day Mr. Kikalos would receive from each store a bag containing receipts which, among other things, included the cash register tapes (also known as "Z tapes") from the stores. The Z tapes from these store registers would have allowed for an accurate calculation of the Kikaloses' gross income. However, after entering the information in his log books, Mr. Kikalos threw away all of the "Z tapes." When the IRS began investigating the Kikaloses' tax returns for the years 1988 and 1989, it determined the Kikaloses' log books to be inadequate to determine their income. As a result, the IRS was forced to reconstruct the Plaintiffs' income by an indirect method, or an estimate, known as the "percentage markup method." This Court has now also determined that Plaintiffs' books were inadequate (Docket No. 39).

Pursuant to Federal Rule of Evidence 702, the court is required to function as a "gatekeeper" with respect to the screening of expert testimony. *Kumho Tire Co.,*

*Ltd. v. Carmichael,* 526 U.S. 137, 148, 119 S.Ct. 1167, 143 L.Ed.2d 238 (citing *Daubert,* 509 U.S. at 589, 113 S.Ct. 2786). Rule 702 imposes "a special obligation upon a trial judge to 'ensure that any and all scientific testimony ... is not only relevant, but reliable.'" *Id.* As the Supreme Court elaborated, the objective "is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho,* 526 U.S. at 152, 119 S.Ct. 1167.

Thus, the application of *Daubert* to an expert's proffered testimony requires the Court to perform a two-step analysis. Initially, the court must determine whether the expert's testimony is reliable, that is, whether it is based on a reliable methodology. *See Cummins v. Lyle Indus.,* 93 F.3d 362, 368 (7th Cir.1996); *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786. Second, the Court must decide "whether evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue." *Cummins,* 93 F.3d at 368.

*Daubert* set forth the familiar nonexhaustive list of five factors that are helpful in gauging the reliability of expert testimony: (1) whether the theory is scientific knowledge that will assist the trier of fact and can be tested; (2) whether the theory has been subjected to peer review or publication; (3) the known or potential rate of error; (4) the existence of standards controlling the technique's operation; and (5) the extent to which the methodology or technique employed by the expert is generally accepted in the scientific community. *Daubert,* 509 U.S. at 593–94, 113 S.Ct. 2786; *Deputy v. Lehman Bros., Inc.,* 345 F.3d 494, 505 (7th Cir.2003). These fac-

tors, however, are "neither definitive nor exhaustive, but rather flexible to account for the various types of potentially appropriate expert testimony." *Deputy*, 345 F.3d at 505 (citing *Kumho*).

■ The Court finds that Dr. Baye's opinion is reliable and based on the scientific method under *Daubert*. At the outset, the Court notes that this is a case in which the financial records of the Plaintiffs' were determined to be inadequate by both the Internal Revenue Service as well as this Court. As a result, the IRS was forced to reconstruct Plaintiff's income by an indirect method, in other words estimate Plaintiffs' income based upon the available information. And similarly, any testimony before this Court regarding the Kikaloses' income will necessarily require assumptions and estimates.

Dr. Baye bases his opinions and conclusions on the factual information that is available in this case which included invoices representing 71% of the total costs of goods reported on the Plaintiffs' tax return, the advertisements that Plaintiffs placed in the local newspapers, and gathered evidence by visiting the Kikaloses' stores on at least two occasions. Dr. Baye also reviewed other factual information available including deposition testimony, tax returns, and journal records, including the U.S. Bureau of Census *Annual Retail Trade Survey*.

Dr. Baye's analysis of these available facts was drawn on "the relevant economics literature, relevant government and trade publications..., and his knowledge of economics, retail pricing, and advertising behavior." This is not a case where Dr. Baye provides merely an ultimate conclusion without any analysis. Instead, as detailed in his expert report, Dr. Baye has surveyed relevant literature, government statistics and applied generally accepted theories of economics and pricing to determine the most likely markup the Kikalos-

es' used in selling liquor in their stores. Dr. Baye's analysis is detailed and can be tested for its reliability. In one instance, Dr. Baye tested his theories that the markup for smaller packaged liquor and beer is greater than larger packages of the same goods and that cold beer had a greater markup than warm beer by actually visiting the Kikaloses' stores. In another instance, Dr. Baye provides evidence of a competitor of the Plaintiffs for which the actual percentage markups are known as a control for his conclusions.

Finally, the Court cannot lose sight of the context in which this testimony arises: Dr. Baye is testifying because the Plaintiffs do not possess adequate records of their income. As a result, any analysis of the Plaintiffs' income necessarily includes estimates and assumptions based on those facts and records that are available. The Court finds that to the extent Dr. Baye uses estimates and assumptions in his analysis, those estimates and assumptions are well grounded in his knowledge and experience, generally accepted economic theory and empirical data. Thus, the Court finds that Dr. Baye's methodology is reliable and consistent with the scientific method.

The Court also finds that Dr. Baye's testimony will assist the jury in understanding the evidence and determining the facts in issue. The United States offers Dr. Baye to demonstrate that the percentage markup used by the Commissioner to estimate the Plaintiffs' tax was reasonable and not arbitrary or excessive. The United States also offers the testimony of Dr. Baye to further show that, with the available records as they were, it is not possible to determine with any certainty the Kikaloses' gross receipts. In both respects the Court finds that Dr. Baye's testimony will assist the jury in understanding and deciding the issues.

Accordingly, because the Court finds that in the present case Dr. Baye's expert opinion is both reliable and likely to assist the jury, the Court hereby DENIES Plaintiff's Motion *in Limine* (Docket No. 87) to exclude the testimony of Dr. Baye.

**SO ORDERED.**